IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARY L. BROCKHOFF,            )
                              )
        Plaintiff,             )
                              )
vs.                           )   Case No. 06-0151-CV-W-ODS
                              )
SHERIFF PAUL VESCOVO, et al., )
                              )
        Defendants.            )

ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO EXCLUDE DEFENDANTS' EXPERT WITNESSES, (2) GRANTING IN PART AND DENYING IN PART OFFICER GAUERT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS, AND (3) DENYING AS MOOT THE REMAINING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS

On January 25, 2008, Plaintiff filed separate motions to exclude testimony from two of Defendants' expert witnesses: Dr. Daniel Claiborne and John Cayton. Defendants did not respond, and the time for doing so has passed. After considering Plaintiff's arguments, the motions (Doc. # 97 and Doc. # 100) are granted in part and denied in part. Defendant Gauert filed a motion to strike Plaintiff's expert; this motion (Doc. # 95) is also granted in part and denied in part. The remaining Defendants filed a motion as well, but none of the claims against them remain so their motion (Doc. # 98) is denied as moot.

I.  LEGAL PRINCIPLES

The use of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. This rule permits the use of specialized knowledge if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," but only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 was promulgated following the

Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which established the district court's role as a "gatekeeper" to insure that expert testimony is relevant, reliable, and helpful to the trier of fact. Case law establishes a list of factors that, depending upon the facts of the case and the field of expertise at issue, may be helpful in conducting this inquiry. However, there is no universal list of factors or requirements; the inquiry depends upon the nature and circumstances of the case at hand. Kumho, 526 U.S. at 150-51; Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).

The Court of Appeals has also cautioned that district courts should not purport to resolve which expert's opinion is "better" or confuse matters of impeachment with matters of admissibility. For instance, "the factual basis of an expert opinion goes to the credibility of the testimony, and not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination. . . . . [O]nly if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (internal quotations omitted).

Of course, to testify an expert must be qualified. The Court's gatekeeping function includes an obligation to assess whether the witness is qualified to present the opinion proffered.

> A witness can be qualified as an expert by "knowledge, skill, experience, training, or education" Fed.R.Evid. 702, and it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. See Kumho Tire, 526 U.S. at 156, 119 S.Ct. 1167. Once initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, Kumho Tire, and related precedents.

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001).

2

Case 4:06-cv-00151-GAF   Document 127   Filed 05/20/08   Page 2 of 5

## II.  DR. DANIEL CLAIBORN

Dr. Claiborn is a psychologist with extensive credentials and experience. According to his report, he was retained to conduct "an independent review of Ms. Brockhoff's medical records to advise regarding Ms. Brockhoff's psychiatric history and mental health condition." The report then contains six paragraphs of "findings," all of which are summaries of Plaintiff's records. These paragraphs do not contain any of Dr. Claiborn's opinions, but they may still be helpful to the jury. By summarizing and explaining the assessments and conclusions of those who actually examined Plaintiff, Dr. Claiborn will help the jury understand the records in question.

However, Dr. Claiborn cannot offer an opinion about Plaintiff's condition. He mentions several possible areas of inquiry but ultimately declines to assess or diagnose Plaintiff's condition because he did not evaluate her personally. Dr. Claiborn's opinion is different from the one proffered in Larson. There, the expert reviewed literature and reports from other experts to form his own independent opinions. 414 F.3d at 941-42. Dr. Claiborn does not purport to have formed any expert opinions and has disclaimed the ability to formulate any; therefore, he will not be permitted to offer an opinion on these matters.

## III.  JOHN CAYTON

Cayton has extensive experience as a crime scene investigator, particularly with regard to firearms-related issues. Through page three of his report, Cayton has set forth observations and conclusions that fall within the ambit of his expertise. Plaintiff submits these opinions should not be admitted, but Plaintiff's arguments are best understood as attacking the weight and not the admissibility of this evidence. Thereafter, Cayton sets forth opinions that do not fall within his area of expertise. For instance, he opines that (1) law enforcement officers complied with certain operating policies, (2) Plaintiff should have acted in a different manner if she was concerned, (3) the officers were threatened, and (4) Deputy Gauert's act of firing at Plaintiff's vehicle

3

"may have saved Officer Coffer's life." Nothing in his background suggests he has the expertise to offer opinions on these matters.

In addition to being beyond Cayton's apparent expertise, it appears these opinions were formulated without the benefit of certain investigative reports prepared by the Clay County Professional Standards Unit. In fact, the factual basis for these opinions is not identified in Cayton's report. The Court concludes Cayton lacked a basis for his opinions (even if he were qualified to offer them in the first place). For these reasons, Cayton may offer the expert opinions contained on pages two and three of his report but may not offer the opinions contained on pages four and five of his report.

## IV. VINCENT FAGGIANO

Although couched in terms of Rule 702 and other rules regarding expert testimony, Deputy Gauert's does not suggest Faggiano is unqualified to offer, or lacks a basis for, his opinions – he simply argues the opinions are irrelevant or otherwise inadmissible. First, Faggiano proposes to testify there was no probable cause to arrest Plaintiff when the deputies exited their car. Deputy Gauert contends this is irrelevant to whether Gauert acted reasonably at the time he fired his weapon, but the Court is not convinced. In assessing whether Deputy Gauert's actions "shocked the conscience," it is appropriate to allow the jury to understand the entire sequence of events. The Court has already ruled that Plaintiff cannot submit a claim based on an unlawful arrest (because Deputy Gauert did not arrest Plaintiff). The Court's only reluctance stems from the fact this testimony may be regarded as a legal conclusion; however, there is no real dispute that probable cause was lacking, so Faggiano would not be offering testimony on a disputed issue of law. At present, the Court is not inclined to bar this testimony.

Similarly, the Court is not inclined to prohibit Faggiano from testifying about the manner in which Deputy Gauert approached Plaintiff's vehicle. This testimony appears relevant in assessing the reasonableness of Deputy Gauert's actions.

4

The third opinion targeted by Deputy Gauert is the conclusion that he used excessive force. The Court has held Plaintiff cannot maintain a Fourth Amendment claim, so Deputy Gauert's objection is well-taken. Faggiano cannot testify that Deputy Gauert's use of force was "excessive" within the meaning of the Fourth Amendment. However, Faggiano's fourth opinion – that the use of force was unnecessary – is proper. A declaration that the use of force was unnecessary or violated the department's policies and procedures may be considered by the jury in determining whether Deputy Gauert's actions violated Plaintiff's Fourteenth Amendment rights.

IT IS SO ORDERED.

DATE: May 20, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT